IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

VERA WRIGHT                                                        PLAINTIFF

V.                                                          NO. 4:25-CV-82-DMB-JMV

WINDOWS USA, LLC; and
JOHN DOE ENTITIES, A-M                                            DEFENDANTS

## ORDER

Vera Wright sued Windows USA, LLC, and unidentified others claiming her hand was severely cut on broken glass negligently left behind after new windows were installed at her home. Windows USA moves to compel arbitration of all Wright's claims and to stay this case pending arbitration. Because a valid arbitration agreement exists and Wright's claims against Windows USA fall within its scope, arbitration will be compelled and this case will be stayed.

### I
### Procedural History

On May 9, 2025, Vera Wright filed a complaint in the Circuit Court of Washington County, Mississippi, against Windows USA, LLC, and John Doe Entities A-M. Doc. #2. In her complaint, Vera asserts claims for negligence, gross negligence, and punitive damages based on allegations that "[she] suffered a severe cut to her right hand from broken glass that had been left behind by [Windows USA's] employees" after Windows USA installed new windows at her home in Greenville, Mississippi. *Id.* at PageID 40. Alleging diversity jurisdiction, Windows USA removed the case to the United States District Court for the Northern District of Mississippi on June 11, 2025.[1] Doc. #1.

---

[1] Windows USA answered the complaint on July 18, 2025. Doc. #4. It appears the answer is untimely. Under Federal Rule of Civil Procedure 81, "[a] defendant who did not answer before removal must answer … 21 days after receiving … a copy of the initial pleading[,] … 21 days after being served with the summons[,] … or … 7 days after the notice

On September 17, 2025, Windows USA filed a motion to stay and compel arbitration. Doc. #14. The same day, pursuant to Local Rule 16, United States Magistrate Judge Jane M. Virden stayed the attorney conference, disclosure requirements, and all discovery pending the Court's ruling on the motion. Doc. #16. Vera responded to the motion five days later. Doc. #17.[2] Windows USA timely replied. Doc. #19.

**II**
**Background**

On January 31, 2023, Vera Wright and Hayward Wright signed a "Custom Window Installation Agreement" ("Installation Agreement") with Windows USA, LLC, in which they agreed to pay Windows USA $21,450.00 for the installation of twenty-six windows at their residence located at 1919 Susan Drive in Greenville, Mississippi. Doc. #14-1[3] at 1. By signing the Installation Agreement, the Wrights acknowledged receipt of certain documents, including "the **Arbitration Agreement** contained on the following page." *Id.* (emphasis in original). The Arbitration Agreement states in relevant part:

> **Binding Arbitration**. Customer(s) … and Windows USA … agree that if a Dispute … arises between you and Windows USA, upon demand by either you or Windows USA, the Dispute shall be resolved by the following arbitration process. This Arbitration Agreement shall be broadly interpreted. "Dispute" means any disagreement, claim or controversy between you and Windows USA, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, common law, equity, or otherwise; (2) claims that arose before you entered into the … Installation Agreement; (3) claims that arise during the performance or term of the

---

of removal is filed," whichever period is the longest. FED. R. CIV. P. 81(c)(2). The longest of these periods set Windows USA's deadline to answer as June 18, 2025—seven days after it filed the removal notice. However, Vera has not raised an issue of the answer's untimeliness. *See De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958) ("[I]mportantly, appellant made no objection … because of the late filing of the answer. We must, therefore, assume that appellant waived her rights.").

[2] In violation of Local Rule 7(b)(2), Vera failed to include a meaningful description in the Court's electronic filing system of each exhibit she attached to her response. Docs. #17-1, #17-2, #17-3. The Court excuses this procedural failure in this instance only.

[3] Document #14-1 is the copy of the Installation Agreement attached to Windows USA's motion to compel. The copy attached to Vera's response in opposition to the motion is identical. *Compare* Doc. #17-1 *with* Doc. #14-1.

2

… Installation Agreement; (4) claims that arise after the expiration or termination of the … Installation Agreement, (5) claims relating to your financing for the purchase and installation of the Products …; and (6) any disagreements about the meaning or application of this Arbitration Agreement.

*Id.* at 2 (emphasis in original).

On March 9, 2023, AJ Harvey signed a "Job Site Work Order" ("Work Order") that identified him as "Subcontractor," Windows USA as "Contractor," and Hayward as "Customer," and specified the installation of twenty-six windows at 1919 Susan Drive in Greenville, Mississippi, by Harvey for the price of $21,450.00. Doc. #17-3 (full capitalization omitted). By signing the Work Order, Harvey acknowledged, "I am a Sub-contractor and the sole proprietor of my window installation business," and "I accept [the] job described above at the contracted price stated in Windows USA revised rate sheet."[4]  *Id.*  According to the Wrights' complaint, the new windows were installed at their residence that same date. Doc. #2 at PageID 40.

### III
### <u>Analysis</u>

Windows USA argues that "[t]he parties agreed to arbitrate the dispute" and "no federal statute or policy renders [Vera's] claims non-arbitrable." Doc. #15 at 5, 8. Vera responds that "the arbitration agreement is not applicable to work of independent contractors," and limited discovery is required to determine "what work was performed by the actual employees of Windows USA, LLC as opposed to the various independent contractors with whom Windows USA, LLC subcontracted without [her] knowledge." Doc. #18 at 2, 4 (emphasis omitted). Windows USA replies that "[t]he discovery [Vera] is requesting can be conducted during arbitration, and … is not a sufficient basis to avoid arbitration;" and "whether the work at issue

---

[4] Harvey also acknowledged by his signature, "I completely guarantee my labor to the effect that I will repair any deficiencies on a timely basis;" and "[a]s an independent contractor, I personally take full ownership of any and all window and/or door units pertaining to the above referenced consumer." Doc. #17-3.

'was performed by [its] actual employees …' or by 'various independent contractors' does not invalidate the otherwise enforceable arbitration agreement signed by … the two parties in this lawsuit." Doc. #19 at 2–3 (quoting Doc. #18 at 4).

## A. Arbitration

The Federal Arbitration Act ("FAA") "permits an aggrieved party to file a motion to compel arbitration when an opposing 'party has failed, neglected, or refused to comply with an arbitration agreement.'" *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quoting *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). To determine whether parties should be compelled to arbitrate a dispute turns on a two-part inquiry: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement." *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). If the parties agreed to arbitrate the dispute, a court should then consider "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Id.* (quoting *Sherer*, 548 F.3d at 381); *Bailey*, 364 F.3d at 263.

Here, because no party argues that a federal statute or policy bars arbitration of the claims,[5] this Court need only decide whether the parties agreed to arbitrate their dispute.

### 1. Governing law

When "determining whether the parties agreed to arbitrate a certain matter, courts apply

---

[5] Windows USA argues that "no federal statute or policy renders [Vera]'s claims non-arbitrable." Doc. #15 at 8. Vera does not dispute this. *See generally* Docs. #17, #18.

4

the contract law of the particular state that governs the agreement." *Bailey*, 364 F.3d at 264; *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("[C]ourts generally … should apply ordinary state-law principles that govern the formation of contracts."). Neither Vera nor Windows USA expressly argues which state's law should govern the arbitration agreement[6]—they cite only United States Supreme Court and Fifth Circuit law, not state law. And though the Installation Agreement includes an "[a]dditional notice for Mississippi customers" that states in part that "Mississippi law requires that we inform you as to whether we carry general liability insurance insuring our work under this contract,"[7] there is no express provision in the Installation Agreement (or the Work Order) either specifying what law governs.[8] But because the Installation Agreement containing the Arbitration Agreement mentions Mississippi law, this case was initiated in a Mississippi state court, the windows were installed in Vera's residence in Mississippi,[9] and regardless, "[w]hen, as here, jurisdiction is based on diversity, we apply the substantive law of the forum state,"[10] the Court will employ Mississippi law.

### 2. Agreement to arbitrate

Windows USA maintains that "the parties have agreed to arbitrate the dispute because a

---

[6] Windows USA acknowledges that "[t]o determine whether the parties formed a valid agreement to arbitrate, the Court applies ordinary principles of state contract law" but asserts only that "[t]he FAA preempts any Mississippi law, rule or policy that would invalidate the Arbitration Agreement or render it unenforceable." Doc. #15, at 5, 8.

[7] Doc. #14-1 at 1 (emphasis omitted).

[8] The Arbitration Agreement mandates where arbitration is to take place:

> Unless you and Windows USA agree otherwise, any arbitration hearing will take place at a location convenient to you in the area where you receive Products from Windows USA. If you no longer own the Property where Products were installed when you notify Windows USA of your Dispute, then any arbitration hearing will take place at a location convenient to you in the county where you reside when you notify Windows USA of your Dispute provided that Windows USA offers its products and services in that county, otherwise, in the area where the Property is located.

*Id.* at 2.

[9] *See id.* at 1 (Vera's representation in the Installation Agreement that "she is the owner of the residential real estate located at [the Susan Drive, Greenville, Mississippi address].").

[10] *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).

valid arbitration agreement exists;" and "[Vera] cannot meet the burden of showing that the Arbitration Agreement is invalid" because "[t]here is no evidence the [Installation Agreement] was the result of fraud or duress, nor does [Vera] allege that she entered into an unconscionable agreement." Doc. #15 at 5, 6–7. Vera does not contest the validity of the Arbitration Agreement. *See generally* Docs. #17, #18.

Courts "determine[] whether there is a valid agreement to arbitrate and who is bound by it based on 'ordinary contract principles.'" *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073–74 (5th Cir. 2002)). Under Mississippi law, a contract exists when six elements are present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *White v. Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 896 (Miss. 2022) (emphasis omitted) (quoting *Hattiesburg Health & Rehab Ctr., LLC v. Brown*, 176 So. 3d 17, 21 (Miss. 2015)).

Here, the Installation Agreement—which includes the Arbitration Agreement—constitutes a binding contract since Windows USA, Vera, and Hayward (two or more contracting parties) agreed that Windows USA would install twenty-six windows at the Wrights' home in exchange for $21,450.00 (consideration). Doc. #14-1 at 1. The Installation Agreement provides definite terms regarding the type and amount of product to be installed, the site of installation, and the purchase price. *Id.* There is no indication any party lacked capacity to contract. *See Manhattan Nursing & Rehab. Ctr., LLC v. Hollinshed*, 341 So. 3d 991, 993 (Miss. Ct. App. 2022) ("The law presumes a person sane and mentally capable to enter into a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental incapacity to establish it by a

6

preponderance of proof.") (quoting *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001)). And the Court is unaware of any legal prohibition precluding contract formation in this case. More, the Arbitration Agreement itself clearly and unambiguously specifies "that if a Dispute … arises between [Vera] and Windows USA, upon demand by either [Vera] or Windows USA, the Dispute *shall* be resolved by the following arbitration process." Doc. #14-1 at 1 (emphasis added). So, the Arbitration Agreement is contained in a valid contract and must be enforced under the FAA. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'") (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

### 3. Scope of arbitration agreement

Windows USA argues that "the dispute falls within the scope of the Arbitration Agreement" because "[Vera] asserts claims for negligence and/or wantonness related to [its] employee allegedly leaving glass behind at [her] home;" "[p]ursuant to the terms of the Arbitration Agreement, dispute means any disagreement, claim or controversy … including … claims for relief and theories of liability, whether based in .. tort, … negligence, … or otherwise;" and the Arbitration Agreement "includes claims that arise during the performance or term of the … Installation Agreement and claims that arise after the expiration or termination of the … Installation Agreement." Doc. #15 at 7 (emphases and internal quotation marks omitted). Vera does not appear to disagree that her claims against Windows USA are within the scope of the Arbitration Agreement. *See generally* Docs. #17, #18.

"Determining the scope of an arbitration clause is a matter of contract." *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019). Mississippi law requires

7

courts "to accept the plain meaning of a contract as the intent of the parties if no ambiguity exists." *Freese v. Mitchell*, Nos. 2012-CA-01045, 2013-CA-00361, 2014 WL 1946593, at *6 (Miss. May 15, 2014) (quoting *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 487 (Miss. 2005)). A court must "focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Harrison Cnty. Com. Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 956 (Miss. 2013) (quoting *Scruggs v. Wyatt*, 60 So. 3d 758, 765 (Miss. 2011)).

Here, the Arbitration Agreement provides in clear and unambiguous language that "'Dispute' means any disagreement, claim or controversy between [Vera] and Windows USA, including but not limited to any and all … claims for relief and theories of liability, whether based in contract, tort, … negligence, … or otherwise; … claims that arise during the performance or term of the … Installation Agreement; [and] claims that arise after the expiration or termination of the … Installation Agreement." Doc. #14-1 at 2. Because Vera's negligence, gross negligence, and punitive damages claims asserted in her complaint against Windows USA are explicitly covered by the Arbitration Agreement, those claims against Windows USA are within the Arbitration Agreement's scope.

### 4. Independent contractor(s)

In opposing arbitration, Vera argues that "[f]or the first time in its Initial Disclosures, Windows USA, LLC identified an independent contractor named 'AJ Harvey' as someone likely to have knowledge regarding the installation of the windows in question;" "there is a reference to other independent contractors in [Windows USA]'s Initial Disclosures;" "disclosed for the first time in [Windows USA]'s Initial Disclosures is a document titled 'Job Site Work Order' which is

really a subcontract agreement between Windows USA, LLC and … Harvey;" "it appears that the work in question that caused [Vera]'s injury may have been performed by one or more independent contractors;" and "[t]he arbitration agreement would obviously not apply to an independent contractor not a party to the Installation Agreement." Doc. #18 at 2–3.

In its reply, Windows USA submits that "[Vera] provides no authorities supporting [her] baseless argument" that "the arbitration agreement should 'not apply to an independent contractor not a party to the Installation Agreement;'" "applying [Vera]'s logic to arbitration agreements would mean that no employer could ever compel disputes to arbitration pursuant to valid arbitration agreements if the employees (or contractors) who allegedly engaged in wrongdoing were not parties to the agreement;" "[s]uch an argument is not supported by the law, and it is inherently inconsistent with Federal Arbitration Agreement and the strong federal policy in favor of arbitration;" and "any dispute between [Vera] and [it] is subject to the terms of the subject arbitration agreement as long as [it] remains a Defendant in this lawsuit." Doc. #19 at 2, 3 (quoting Doc. #18 at 3).

Only Windows USA, Vera, and Hayward signed the Installation Agreement which incorporates the Arbitration Agreement. Though the Work Order identifies Harvey as Windows USA's subcontractor and Harvey acknowledged himself an independent contractor, the Court need not address, much less determine, whether Harvey or any independent contractor is bound by the Arbitration Agreement because the only party sued in this case is Windows USA. *See Hinkle v. Phillips 66 Co.*, 35 F.4th 417, 420 (5th Cir. 2022) ("The issue is not whether [the plaintiff] has an arbitration agreement with anyone—it is whether he has an agreement to arbitrate with the party he is suing."). So, whether any independent contractor carried out the work specified in the Installation Agreement between Windows USA and Vera is inconsequential to Vera's agreement

9

to arbitrate her claims in this case against Windows USA.

### 5. Vera's request for limited discovery

In her response, Vera asks that the Court "enter an Order lifting the Stay entered in this action for the purpose of allowing the parties to conduct limited discovery as to the issues surrounding the independent contractors."[11] Doc. #17 at 2–3. Vera submits that "[f]orcing [her] into an expensive arbitration proceeding to only learn that the actions causing the injuries may have been caused by the work of an independent contractor which would lead to a new action being filed against said independent contractor is not in the interest of judicial economy;" "[she] has this action filed, and has named 'Doe Entities' in the same;" and "what is requested does not prejudice Windows USA … at all." *Id.*

Windows USA replies that "[t]he discovery [Vera] is requesting can be conducted during arbitration, and her request to conduct additional discovery to determine whether other individuals have knowledge in this case is not a sufficient basis to avoid arbitration;" and "whether the work at issue 'was performed by the actual employees of [it]' or by 'various independent contractors' does not invalidate the otherwise enforceable arbitration agreement signed by [Vera] and [it]." Doc. #19 at 2–3.

Because Vera violated Local Rule 7(b)(3)(C)'s prohibition that "[a] response to a motion may not include a counter-motion in the same document" but rather "must be an item docketed separately from a response," her requests in her response for limited discovery and to lift the stay

---

[11] Vera specifies that such limited discovery would be "solely on (1) the identification of all independent contractors who performed work at [her] home, (2) the scope of work of each independent contractor, (3) the terms of all subcontracts between Windows USA, LLC and each independent contractors, and (4) all documents to demonstrate that the independent contractors had the liability coverage in place to which they verified was in place in the subcontract documents." Doc. #17 at 2. "[Vera] would agree and stipulate that Windows USA, LLC's participation in this limited discovery would not be argued to be any type of waiver of its right to attempt to compel arbitration of any claims solely against Windows USA, LLC." *Id.*

of discovery for that purpose will be denied.[12]

### 6. Summary

Because Vera and Windows USA agreed to arbitration, and Vera's claims against Windows USA are within the scope of that agreement, arbitration will be compelled.

### B. Stay

In its motion, Windows USA also "asks the Court to stay this case." Doc. #15 at 2. In that regard, the FAA instructs:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Since this Court concluded that Vera's claims against Windows USA must be arbitrated, this case will be stayed pending arbitration.

### IV
### Conclusion

Windows USA's "Motion to Stay and to Compel Arbitration" [14] is **GRANTED**. This case is **STAYED** pending arbitration. The parties are **DIRECTED** to report to the Court every ninety days regarding the status of arbitration.

**SO ORDERED**, this 1st day of June, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[12] Even if Vera's requests in her response were not denied for this procedural reason, they would be denied regardless. If discovery is required to decide Vera's claims against Windows USA on the merits, such discovery can be conducted during arbitration. *See* 9 U.S.C. § 7 ("[A]rbitrators … may summon in writing any person to attend before them … as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.").